**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA**,

    Plaintiff,

vs.                                                                           No. CR 05-1599 MCA

**ANTHONY DEWAYNE HASSON**,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on Defendant Anthony Dewayne Hasson's *Leave Not to Persist in Guilty Plea/Motion to Withdraw* [Doc. 173] filed on December 11, 2006. The Court held a hearing on Defendant's motion in Albuquerque, New Mexico, on December 15, 2006. Having considered the parties' submissions, the written plea agreement, the official transcript of the plea hearing, the representations of counsel at the December 15 hearing, the applicable law, and being fully advised in the premises, the Court denies Defendant's motion to withdraw his guilty plea, as well as his request for leave not to persist in that plea, for the reasons set forth below.

    Contrary to what is represented in Defendant's motion papers, the official transcript reflects that the Court accepted Defendant's guilty plea to Counts 1 and 3 of the *Indictment* on August 23, 2006, pursuant to a written plea agreement filed on that date. [Doc. 155, 159;

Tr. 8-23-06.]  See United States v. Siedlik, 231 F.3d 744, 748-49 (10th Cir. 2000) (distinguishing between acceptance of a plea agreement and acceptance of a party's sentencing recommendation).  Defendant's motion to withdraw his plea was filed approximately 15 weeks later on December 11, 2006, which was four days prior to the scheduled date of the sentencing hearing.  [Doc. 167, 173.]  Therefore, the motion to withdraw Defendant's guilty plea is governed by Fed. R. Crim. P. 11(d)(2)(B), which permits district courts to grant a motion to withdraw a guilty plea if "the defendant can show a fair and just reason for requesting the withdrawal.  See United States v. Graham, 466 F.3d 1234, 1237 (10th Cir. 2006).  This rule does not, however, allow Defendant to simply elect not to persist in his guilty plea at this juncture.

"The Court determines whether a defendant can show 'a fair and just reason' under [Rule 11(d)(2)(B)] by reference to seven factors."  Id. at 1238.  These factors are:

> "(1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant delayed in filing his motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources."

United States v. Yazzie, 407 F.3d 1139, 1142 (10th Cir. 2006) (quoting United States v. Sandoval, 390 F.3d 1294, 1298 (10th Cir.2004)).  I address each factor in turn.

**1.   Assertion of Innocence.**

Defendant provides no factual basis for asserting that he is not guilty of the two counts of the *Indictment* to which he pleaded guilty on August 23, 2006.  He also points to

no factual error in the stipulations contained in the plea agreement, to which he agreed in his sworn testimony at the plea hearing on August 23, 2006.

Instead, Defendant expresses concern about whether the Court will treat his plea agreement as an admission of other facts which go beyond the stipulations contained therein and then use such additional facts as grounds for imposing a higher sentence than he had contemplated when entering into the plea agreement. These concerns are unfounded.

Defendant has presented no objection to the pre-sentence report's (PSR's) calculation of his criminal history category of IV, and for sentencing purposes, the Court may rely on the stipulations contained within the the plea agreement alone to calculate the base offense level for each offense set forth in the PSR. Thus, it is not necessary for the Court to rely on the PSR's allegations regarding Defendant's involvement with other types or amounts of drugs in order to make such calculations. See Fed. R. Crim. P. 32(i)(3)(B) (providing that the Court may determine that ruling on a controverted matter in the PSR is unnecessary because that matter will not affect sentencing or will not be considered in sentencing); United States v. Peterman, 841 F.2d 1474, 1483 (10th Cir. 1988) (similar). As the PSR does not identify grounds for an upward departure, and no motion or notice of intent to seek a departure or variance from the Guidelines has been filed in this case, the disputed factual allegations in the PSR concerning other types or amounts of drugs also do not provide a basis on which the Court may increase Defendant's sentence beyond the Guideline imprisonment range. See Fed. R. Crim. P. 32(h); United States v. Calzada-Maravillas, 443 F.3d 1301,

1304 (10th Cir. 2006) ("[T]he district court must provide *advance* notice of its intent to depart.").

Therefore, any dispute about whether Defendant has been involved with types or amounts of drugs that are greater than, or different from, those stipulated in the plea agreement has no bearing on the Guideline calculation or the length of the sentence to which he may be exposed in this case. And because this dispute has no bearing on Defendant's sentencing at this point, it cannot provide grounds for Defendant to believe that he was mistaken or misunderstood about the maximum sentence he might receive as a result of his guilty plea. See Graham, 466 F.3d at 1238.

Defendant also maintains his innocence as to the facts necessary to support a role adjustment under U.S.S.G. § 3B1.1(a). However, that role adjustment is not one of the counts of the *Indictment* to which he pleaded guilty. For sentencing purposes, the Government still bears the burden of proving the facts necessary to support a role adjustment by a preponderance of the evidence. See United States v. Keifer, 198 F.3d 798, 800 (10th Cir. 1999). And the Government cannot meet this burden solely by general references to what happened in another defendant's case, particularly when records in that case are sealed and inaccessible to this Defendant. See United States v. Gomez, No. 05-2151, slip. op. at 4 (10th Cir. Dec. 12, 2006) (unpublished order and judgment).[1]

---

[1] The Court has afforded the parties the opportunity for supplemental briefing on this issue for purposes of the sentencing hearing.

As Defendant did not plead guilty to the role adjustment proposed in the PSR, and the Government still bears the burden of proving the facts necessary for every sentencing enhancement or increase, Defendant's claim that he did not play a leadership role in any larger conspiracy remains unaffected by his guilty plea. Quite simply, there is no plea or admission regarding a role enhancement for Defendant to withdraw. See Graham, 466 F.3d at 1238. For these reasons, this issue presents no belated claims of innocence that would weigh in favor of allowing Defendant to withdraw his guilty plea.

### 2.    **Prejudice to the Government**

On September 16, 2005, the Court entered an order designating this case as complex pursuant to 18 U.S.C. § 3161(h)(8)(B)(ii) "due to the complexity of the facts and the number of defendants, as well as the high volume of discovery and the need for extensive pre-trial investigation." [Doc. 58.] Since that date, some of the defendants have pleaded guilty, while others remain fugitives. The materials turned over in discovery indicate that the Government's investigation relies on the use of one or more confidential informants. Due to the case's complexity, it was also necessary for the Court to set a number of non-standard pretrial deadlines in order to allow sufficient time for trial preparation. [Doc. 57, 124, 149.] Counsel estimated that the Defendant's trial would last from 10 days to two weeks. [Doc. 147.]

This schedule of pretrial deadlines, as well as the trial date, were vacated when Defendant changed his plea to guilty on Counts 1 and 3 of the *Indictment*. If Defendant were allowed to withdraw his guilty plea, then the matter could not proceed to trial without

sufficient lead time for addressing pretrial matters, and the Court would have to impose a new set of pretrial deadlines again. When combined with the previous delays that have occurred in this case, this additional delay will make it more difficult for the Government to marshal its witnesses for trial and for those witnesses to accurately recall the events which the Government must prove to the jury at trial. In a case as complex and sensitive as this one, the prejudicial effect of allowing Defendant to withdraw his guilty plea at this late juncture cannot be underestimated. See Yazzie, 407 F.3d at 1143; United States v. Wade, 940 F.2d 1375, 1379 (10th Cir. 1991).

### 3. **Delay.**

Defendant pleaded guilty on August 23, 2006, and did not move to withdraw his plea until approximately fifteen weeks later on December 11, 2006, which was only four days before the scheduled date for his sentencing hearing. [Doc. 155, 159, 167, 173.] Defendant provides no justification for this lengthy delay in moving to withdraw his guilty plea.

Under the terms of the Court's previous scheduling orders, Defendant was afforded ample time to retain new counsel, review the discovery materials, and conduct plea negotiations. Both the written plea agreement and the plea colloquy at the hearing on August 23, 2006, are very explicit on the topic of sentencing, with clear indications as to the stipulated base offense levels, as well as the Court's discretion to impose a sentence that is above the Guideline imprisonment range for these base offense levels. In addition, the sentencing hearing was continued once before at Defendant's request in order to allow him additional time to formulate his responses to the PSR. [Doc. 167, 171.] For these reasons,

there is no excuse for the delay that would weigh in favor of allowing Defendant to withdraw his guilty plea on the eve of the sentencing hearing.  See Graham, 466 F.3d at 1238.

### 4. **Inconvenience to the Court.**

While it is never particularly convenient for the Court to vacate or reschedule a trial date or a sentencing hearing at the last minute due to the dilatory conduct or tactical maneuvers of parties or their counsel, such inconvenience is heightened in this case because of its complexity and the anticipated length of the trial.  The Court has already expended significant resources to arrange its calendar and craft a set of carefully structured pretrial deadlines tailored to the unique and complex needs of this case.  The substantial inconvenience of devoting further resources to repeating this task again weighs against allowing Defendant to withdraw his guilty plea at this late juncture.  See Graham, 466 F.3d at 238-39.

### 5. **Close Assistance of Counsel.**

Defendant has been afforded considerable leeway in obtaining and consulting with the counsel of his choice in this matter, and he testified under oath that he was satisfied with his present counsels' services at the plea hearing on August 23, 2006.  When Defendant informed the Court that he had discharged the counsel he first retained in this matter, the Court immediately ordered the appointment of new counsel for him from the CJA panel so he would not be without counsel for any period during the pendency of this case.  [Doc. 115, 116.]  The Court also allowed Defendant to continue his efforts to retain counsel while he was being represented by appointed counsel, and when these efforts succeeded, the Court

allowed Defendant's chosen counsel to replace his appointed counsel without hesitation. [Doc. 121, 132, 133, 135, 136.] The Court's scheduling orders also allowed Defendant time to establish communications with his new counsel, review any information that was not disclosed to him by his previous counsel, and conduct plea negotiations. [Doc. 124, 149.] Further, Defendant made no indication that he was dissatisfied with his present counsel at the hearing on December 15, 2006.

On these facts, there is simply no basis for concluding that Defendant lacked "the close and informed assistance of counsel before choosing his path." Graham, 466 F.3d at 1239. Further, Defendant's sworn testimony at the plea hearing on August 23, 2006, and his counsel's representations at that hearing, flatly contradict the statements in Defendant's motion to withdraw his guilty plea regarding his alleged lack of understanding about the sentencing consequences of his plea agreement. Thus, I find that these statements in Defendant's motion are completely lacking in credibility. As noted above, both the written plea agreement and the plea colloquy at the hearing on August 23, 2006, "thoroughly catalogued the implications of entering a plea of guilty." Id. Accordingly, this factor also weighs strongly against allowing Defendant to withdraw his guilty plea after receiving such close and thorough advice.

### 6. **Knowledge and Voluntariness of the plea.**

Defendant does not point to any circumstances which render his guilty plea involuntary. There is no evidence of coercion, and there has never been any question about Defendant's mental or intellectual capabilities or his understanding of the English language.

Rather, Defendant claims in his motion that he did not knowingly enter his guilty plea because he misunderstood the sentencing consequences of the plea agreement and the Government's sentencing posture during plea negotiations. However, at the hearing on December 15, 2006, counsel for Defendant conceded that the plea proceeding was not flawed and the issues raised relate, instead, to sentencing.

Under these circumstances, any claim that Defendant did not knowingly enter his guilty plea is not credible because such a claim is flatly contradicted by Defendant's sworn testimony and his counsels' representations at the plea hearing on August 23, 2006. Defendant testified that he read and understood the written plea agreement, and that he reviewed it with his counsel before pleading guilty. Both the written agreement and the plea colloquy are very explicit about the calculation of the base offense level and the Court's discretion to impose a sentence above that base offense level, regardless of any position the Government may take concerning what the appropriate sentence should be. See Siedlik, 231 F.3d at 748-49. For these reasons, I stand by my earlier finding that Defendant knowingly and voluntarily entered into this plea agreement, and this factor weighs against allowing him to withdraw his guilty plea after it I accepted it based on that finding. See id. at 749-50.

### 7.     **Waste of Judicial Resources**.

The Tenth Circuit has noted that considering whether withdrawal of a guilty plea will waste judicial resources ordinarily does not add significantly to the analysis because this factor "triggers similar concerns as those raised under the 'inconvenience to the court'" factor discussed previously. Graham, 466 F.3d at 1239. In this case, however, it also bears

noting that many of the concerns raised in Defendant's motion to withdraw his guilty plea are more appropriately addressed in the context of his objections to the factual allegations and Guideline calculations in the PSR, which will be heard at the sentencing hearing. Thus, the conservation of judicial resources weighs in favor of proceeding to address these objections at the sentencing hearing, which may narrow the issues, rather than allowing Defendant to withdraw his guilty plea before the parties have been heard on sentencing matters.

Because the Court accepted Defendant's guilty plea at the hearing on August 23, 2006, and all seven of the factors for evaluating his reasons for seeking to withdraw this plea under Fed. R. Crim. P. 11(d)(2)(B) weigh against such withdrawal, I conclude that Defendant's motion must be denied. Defendant is not entitled to withdraw his guilty plea.

**IT IS, THEREFORE, ORDERED** that Defendant Anthony Dewayne Hasson's *Leave Not to Persist in Guilty Plea/Motion to Withdraw* [Doc. 173] is **DENIED**.

**SO ORDERED** in Albuquerque, New Mexico, this 20th day of December, 2006.

_____
**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**